[Cite as *In re E.S.*, 2018-Ohio-1902.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| E.S. and L.S., | : | Case No. 17CA16 |
| | : | 17CA17 |
| Adjudicated Dependent Children. | : | |
| | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| | : | RELEASED 05/10/2018 |

APPEARANCES:

Jesse A. Atkins, Columbus, Ohio, for Appellant.

Judy C. Wolford, Pickaway County Prosecuting Attorney, and Robert A. Chamberlain, Pickaway County Assistant Prosecuting Attorney, Circleville, Ohio, for Appellee Pickaway County Job and Family Services.

Hoover, J.

{¶ 1}   T.Z., the children's biological mother, appeals the trial court's judgment that awarded M.H., the children's paternal grandmother, legal custody of her two children:  ten-year-old E.S.; and seven-year-old L.S. For the reasons that follow, we affirm the trial court's judgment.

**I.  Facts and Procedural Posture**

{¶ 2}   On September 3, 2015, Pickaway County Job and Family Services ("the agency") filed complaints that alleged E.S. and L.S. are dependent children. The complaints alleged that the children's mother recently gave birth to a child who showed signs of chemical withdrawal and that the mother admitted that during her pregnancy, she used hydrocodone and gabapentin without a prescription. The court subsequently placed the children in their stepfather's custody, subject to a protective supervision order.

{¶ 3}   The mother later stipulated to the facts alleged in the complaint; and the trial court adjudicated the children dependent. The court continued the children's placement with their stepfather.

{¶ 4}   A little more than a year later, the trial court granted M.H. ex parte emergency temporary custody of the children. The court noted that both the mother and the stepfather tested positive for methamphetamine and that the mother tested positive for alcohol. The court thus placed the children in M.H.'s temporary custody.

{¶ 5}   On June 30, 2017, M.H. filed a motion for legal custody of the two children. The biological father, T.S., consented.

{¶ 6}   On August 29, 2017, the court held a hearing to consider M.H.'s motion for legal custody. PCJFS caseworker David Groff testified that the agency supports M.H.'s motion for legal custody and that he believes placing the children in M.H.'s legal custody is in their best interest. Groff explained that between the time the agency filed its dependency complaints and the end of July 2017, the mother made little effort to comply with the case plan. He stated that the mother did not demonstrate "a lot of consistency or much participation." Groff indicated that within the last thirty days, the mother intensified her efforts to comply with the case plan and now mostly is in compliance.

{¶ 7}   Groff further testified, however, that both the mother and the stepfather are unemployed. Groff stated that when he last spoke with the mother a few weeks earlier, the mother indicated that she earned income by "giv[ing] plasma." Groff additionally explained that the mother's current lease expires at the end of September 2017, and that she has yet to secure additional housing.

{¶ 8}   Pam Moody, the children's guardian ad litem, testified that she believes placing the children in M.H.'s legal custody is in their best interest. Moody explained that the children get along well with M.H. and indicated that they would like to live with M.H. Moody stated that the children do not want to return home to their mother.

{¶ 9}   Moody does not believe that the mother made an effort to comply with the case plan. She stated that the mother's drug screens returned positive for cocaine and opioids. Moody additionally explained that both the mother and the stepfather take prescription drugs and claim that they have cancer "but they're not sure which kind." Moody related that the mother also professed to have a rare blood disorder; to be bipolar; and to have personality disorders, paranoid schizophrenia, depression, and anxiety.

{¶ 10} Moody testified that during the mother's visits with the children, the mother promises the children that they will return home and that they can get a dog. Moody indicated that the agency admonished the mother and told her not to make promises; but the mother did not listen. Moody also revealed that during visits with the children, the mother and the stepfather use foul language and denigrate the caseworkers.

{¶ 11} M.H. testified that she has been involved with the children since they were born. She related that the children are happy in her home and that the children do not want to return to their mother.

{¶ 12} The mother stated that she would like her children returned to her "[m]ore than anything in the world." The mother believes that she has done "everything [she] could do" over the past two years to "[t]ry to change [her] way of thinking, try to change [her] lifestyle, turn around make [her] life better for [her]self and [her] children." She indicated that when she was in prison, she engaged in mental health counseling and did "everything they had to offer so [she]

could understand more about what [she] needed to do with [her]self." The mother also claimed that (1) she attended a parenting program through her church, (2) since May or June she has been attending AA, and (3) she currently engages in counseling at Behavioral Health Group.

{¶ 13} The mother explained that when her current lease expires, she intends to stay with her sister until she locates a new residence. She stated that she has sufficient means to care for the children. The mother related that she earns income by cleaning houses and that she receives food stamps and medical and housing assistance.

{¶ 14} The mother testified that she does not believe the court should place the children in M.H.'s legal custody "[b]ecause * * * they're my children." She claimed that she has done "everything" that she can and that she has "completed the case plan but it's still not good enough." The mother does not doubt that M.H. provides the children with proper care; but she believes that as the children's mother, the children should be placed with her.

{¶ 15} On September 7, 2017, the trial court granted M.H. legal custody of the children. The court noted that the mother recently made some progress towards reunification but ultimately concluded that:

> [t]he mother's failure to timely complete the case plan, to effectively engage in meaningful counseling, to participate in drug treatment, to test clean for drug usage on a consistent basis, to have positive visitation experiences with the child, to engage in appropriate adult parent behavior during visits, her self-acknowledged mental health issues and to put into place any parenting skills that she might have learned all demonstrate that mother is not a proper custodian at this time.

The court found that M.H., on the other hand, "provides an environment for positive, meaningful interrelationships with family, a productive positive educational environment and a safe, healthy home environment." The court thus placed the children in M.H.'s legal custody.

## II.  Assignment of Error

{¶ 16}  The mother raises one assignment of error:

> The trial court's award of legal custody of the minor children at issue failed
>
> to meet the applicable legal standards, constitutes an abuse of discretion
>
> and should be reversed.

## III.  Law and Analysis

{¶ 17}  In her sole assignment of error, the mother asserts that the trial court abused its discretion by placing the children in M.H.'s legal custody. In particular, she contends that the court abused its discretion by determining that her failure to comply with the case plan shows that placing the children in M.H.'s legal custody is in the children's best interest. The mother argues that she has been complying with the case plan and that the trial court discounted her efforts.

### A. Notice of Appeal Was Timely

{¶ 18}  We initially observe that the mother filed her notice of appeal more than thirty days after the trial court entered its final judgment placing the children in M.H.'s legal custody. However, the clerk did not serve the judgment on the parties in accordance with Civ.R. 58(B), as interpreted in *Clermont Cty. Transp. Improvement Dist. v. Gator Milford, L.L.C.*, 141 Ohio St.3d 542, 2015-Ohio-241, 26 N.E.3d 806. Civ.R. 58(B) states:

> When the court signs a judgment, the court shall endorse thereon a direction to the
>
> clerk to serve upon all parties not in default for failure to appear notice of the
>
> judgment and its date of entry upon the journal. Within three days of entering the

judgment upon the journal, the clerk shall serve the parties in a manner prescribed by Civ.R. 5(B) and note the service in the appearance docket. Upon serving the notice and notation of the service in the appearance docket, the service is complete. The failure of the clerk to serve notice does not affect the validity of the judgment or the running of the time for appeal except as provided in App. R. 4(A).

{¶ 19} App.R. 4(A)(3) provides that "if the clerk has not completed service of the order within the three-day period prescribed in Civ.R. 58(B), the 30-day periods referenced in App.R. 4(A)(1) and 4(A)(2) begin to run on the date when the clerk actually completes service."

{¶ 20} In *Gator Milford*, the Ohio Supreme Court outlined the requirements a clerk of courts must follow in order to perfect service under Civ.R. 58(B). The court explained:

[W]hen a trial court issues a judgment, it must also issue a directive to the clerk of courts to serve all interested parties and attorneys with that judgment. Pursuant to Civ.R. 58(B), the clerk must then indicate *on the docket* the names and addresses of the parties it is serving the judgment upon, the method of service, and the costs associated with the service. When these steps are followed, there is no question whether service was perfected according to rule.

(Emphasis added.) *Id.* at ¶ 3.

{¶ 21} Thus, the thirty-day time to appeal does not begin to run until the clerk serves notice and notes service in the appearance docket in accordance with Civ.R. 58(B), as interpreted in *Gator Milford*. *Id.* at ¶ 11 (stating that the "30–day time period to file a notice of appeal begins upon service and notation of service on the docket"); *see also In re Anderson*, 92 Ohio St.3d 63, 67, 748 N.E.2d 67 (2001) (holding that Civ.R. 58(B) and App.R. 4 apply in juvenile proceedings).

{¶ 22} In the case at bar, on September 7, 2017, the clerk filed a "Clerk's Certificate of

Ordinary Mail Service or By Hand." The document indicates that on September 7, 2017, the clerk's office served a copy of the court's decision and judgment entry on legal custody to all parties by hand. However, the docket sheet submitted to this court simply states: "Clerk Serve." Thus, while the document in the record may indicate that the clerk served the parties by hand, this document does not appear to comply with the Ohio Supreme Court's directive in *Gator Milford*. The clerk did not indicate *on the docket* the names and addresses of the parties who were served, the method of service, or the costs associated with the service. We therefore consider appellant's appeal to be timely.

### B. Standard of Review

{¶ 23} "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen,* 129 Ohio St.3d 417, 2011–Ohio–3361, 953 N.E.2d 302, ¶ 14. Consequently, we review a trial court's decision to award a party legal custody of an abused, neglected, or dependent child for an abuse of discretion, and we afford its decision "the utmost deference." *In re E.W.,* 4th Dist. Washington Nos. 10CA18, 10CA19, and 10CA20, 2011–Ohio–2123, ¶ 18, citing *Miller v. Miller,* 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988); *accord In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733, ¶ 27, citing *Flickinger,* 77 Ohio St.3d 415, 417, 674 N.E.2d 1159 (1997) (stating that "a trial court's decision in a custody proceeding is subject to reversal only upon a showing of abuse of discretion"); *In re A.L.P.*, 4th Dist. Washington No. 14CA37, 2015-Ohio-1552, ¶ 15; *In re C.J.L.,* 4th Dist. Scioto No. 13CA3545, 2014–Ohio–1766, ¶ 12. Ordinarily, "[t]he term 'abuse of discretion' implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *In re H.V.,* 138 Ohio St.3d 408, 2014–Ohio–812, 7 N.E.3d 1173, ¶ 8. In *Davis,* however, the court explained the abuse of discretion standard that applies in child-custody proceedings as follows:

The standard for abuse of discretion was laid out in the leading case of *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, but applied to custody cases in *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus:

"Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (*Trickey v. Trickey* [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)"

The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. As we stated in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80–81, 10 OBR 408, 410–412, 461 N.E.2d 1273, 1276–1277:

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *

" * * *

" * * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be

encroached upon by a reviewing tribunal, especially to the extent where the

appellate court relies on unchallenged, excluded evidence in order to justify its

reversal."

This is even more crucial in a child custody case, where there may be much

evident in the parties' demeanor and attitude that does *not* translate to the record

well.

*Id.* at 418-419. While we might be "perplexed" by this hybrid abuse-of-discretion-manifest-

weight standard, the Ohio Supreme Court has not overruled, modified, or clarified the standard set

forth in *Bechtol* or *Davis*. *A.L.P.* at ¶ 23 (Harsha, J., concurring). We therefore continue to apply

this standard when reviewing child custody matters.

{¶ 24} Accordingly, reviewing courts should afford great deference to trial court child

custody decisions. *Id.* at ¶ 16; *E.W.* at ¶ 19, citing *Pater v. Pater,* 63 Ohio St.3d 393, 396, 588

N.E.2d 794 (1992). Additionally, because child custody issues involve some of the most difficult

and agonizing decisions that trial courts are required to decide, courts must have wide latitude to

consider all of the evidence, and appellate courts should not disturb a trial court's judgment

absent an abuse of discretion. *Davis,* 77 Ohio St.3d 418; *Bragg v. Hatfield,* 152 Ohio App.3d 174,

2003–Ohio–1441, 787 N.E.2d 44, ¶ 24 (4th Dist.); *Hinton v. Hinton,* 4th Dist. Washington No.

02CA54, 2003–Ohio–2785, ¶ 9; *Ferris v. Ferris,* 4th Dist. Meigs No. 02CA4, 2003–Ohio–1284, ¶

20.

### C. Legal Principles

{¶ 25} " 'The right of a parent to the custody of his or her child is one of the oldest

fundamental liberty interests recognized by American courts.' " *State ex rel. Otten v. Henderson,*

129 Ohio St.3d 453, 2011–Ohio–4082, 953 N.E.2d 809, ¶ 31, quoting *In re Thompkins,* 115 Ohio

St.3d 409, 2007–Ohio–5238, 875 N.E.2d 582, ¶ 10. Consequently, "[p]arents have a constitutionally protected due process right to make decisions concerning the care, custody, and control of their children, and the parents' right to custody of their children is paramount to any custodial interest in the children asserted by nonparents." *In re Mullen,* 129 Ohio St.3d 417, 2011–Ohio–3361, 953 N.E.2d 302, ¶ 11. Nevertheless, a parent's paramount right to custody of his or her children is not unlimited. *Id.* Instead, " 'the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.' " *In re Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.,* 300 So.2d 54, 58 (Fla.App.1974); *accord In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 20.

{¶ 26} Furthermore, if a parent is unsuitable, the parent forfeits his or her paramount right to custody. *In re Perales,* 52 Ohio St.2d 89, 98–99, 369 N .E.2d 1047 (1977) ("Once the court determines that the parent has forfeited custody or that parental custody would be detrimental to the child, it must indicate that a preponderance of the evidence militates against parental custody by making a finding of unsuitability"). "[A] juvenile court adjudication of abuse, dependency, or neglect 'is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents.' " *In re Brayden James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶ 22, quoting *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 23.

{¶ 27} Once a trial court adjudicates a child abused, neglected, or dependent, R.C. 2151.353(A)(3) authorizes the court to "[a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the

dispositional hearing by any party to the proceedings." Additionally, a trial court may terminate or modify a prior dispositional order and award legal custody to a nonparent if doing so serves the child's best interest. *A.L.P.* at ¶ 17; *E.W.* at ¶ 20; *see* R.C. 2151.417(B) (granting juvenile court authority to amend its dispositional orders). *See generally In re Pryor*, 86 Ohio App.3d 327, 332, 620 N.E.2d 973 (4th Dist.1993) (stating that "the primary, if not only, consideration in the disposition of all children's cases is the best interests and welfare of the child").

> "Legal custody" means a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

R.C. 2151.011(B)(21). Although legal custody is intended to be permanent in nature, R.C. 2151.42(B), it "is not as drastic a remedy as permanent custody because a parent retains residual rights and has the opportunity to request the return of the children." *In re Memic,* 11th Dist. Lake Nos. 2006-L-049, 2006-L-050, and 2006-L-051, 2006-Ohio-6346, ¶ 24 (citations omitted); *In re Nice,* 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (7th Dist.2001).

{¶ 28} R.C. 3109.04 specifies the best interest factors courts must consider when determining whether to award legal custody to a nonparent. *A.L.P.* at ¶ 17, citing *E.W.* at ¶ 20; R.C. 2151.23(F)(1); *In re Poling,* 64 Ohio St.3d 211, 594 N.E.2d 589 (1992), paragraph two of the syllabus ("[w]hen a juvenile court makes a custody determination under R.C. * * * 2151.353, it must do so in accordance with R.C. 3109.04"); *Pryor,* 86 Ohio App.3d at 333, fn.4 (stating that a trial court applies the same best interest standard in child custody disputes originating from a

divorce and originating from a neglect, dependency, abuse complaint). Those factors are as follows:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to [certain specified criminal offenses];

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a

residence, outside this state.

{¶ 29} In the case at bar, the trial court did not engage in a specific analysis of the

foregoing best interests factors. However, the mother did not request the trial court to issue

findings of fact and conclusions of law. Thus, in the absence of a proper request for findings of

fact and conclusions of law, the court had no obligation to do analyze the best interest factors.

Civ.R. 52 ("When questions of fact are tried by a court without a jury, judgment may be general

for the prevailing party unless one of the parties in writing requests otherwise * * * in which case,

the court shall state in writing the conclusions of fact found separately from the conclusions of

law.").

{¶ 30} Moreover, the failure to request findings of fact and conclusions of law ordinarily

results in a waiver of the right to challenge the trial court's lack of an explicit finding concerning

an issue. *Pawlus v. Bartrug,* 109 Ohio App.3d 796, 801, 673 N.E.2d 188 (9th Dist.1996).

Additionally, when a party fails to request findings of fact and conclusions of law, we generally

must presume the regularity of the trial court proceedings. *Bunten v. Bunten,* 126 Ohio App.3d

443, 447, 710 N.E.2d 757 (3d Dist.1998); *accord Cherry v. Cherry,* 66 Ohio St.2d 348, 356, 421

N.E.2d 1293 (1981). This means that we ordinarily presume that the trial court applied the law

correctly and affirm if some evidence in the record supports the court's judgment. *Bugg v.*

*Fancher,* 4th Dist. Highland No. 06CA12, 2007–Ohio–2019, ¶ 10; *see Yocum v. Means,* 2d

Dist. Darke No. 1576, 2002–Ohio–3803, ¶ 7 ("The lack of findings obviously circumscribes our

review * * *."). As the court explained in *Pettet v. Pettet,* 55 Ohio App.3d 128, 130, 562 N.E.2d

929 (5th Dist.1988):

[W]hen separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with his judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence.

The message should be clear: If a party wishes to challenge the custodial judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already "uphill" burden of demonstrating error becomes an almost insurmountable "mountain."

{¶ 31} In the case at bar, we are unable to conclude that the trial court abused its discretion by granting legal custody to M.H. Instead, the record contains some evidence that reasonably supports the trial court's decision that placing the children in M.H.'s legal custody is in their best interest. With respect to the parents' wishes, the biological father consented to placing the children in M.H.'s legal custody. The mother continues to contest this placement. It does not appear that the trial court interviewed the children, but both M.H. and the children's guardian ad litem indicated that the children want to live with M.H. and do not want to return to their mother. The children are well-adjusted to M.H.'s home, where they receive ample love and proper care. The children's visits with their mother often involve profanity and empty promises. The mother has self-described mental health issues, as well as documented substance abuse issues. There is no evidence that either M.H. or the children suffer from mental health issues. M.H. stated that she would allow the mother to visit the children.

{¶ 32} Moreover, the mother only started complying with the case plan at the end of July 2017—almost two years after the agency initially filed its dependency complaints. We note that the mother asserts that she was in jail for the first year and thus could not comply with the case plan. However, she does not adequately explain why she did not immediately intensify her efforts to comply with the case plan following her release, as opposed to waiting until thirty days before the court held the hearing to consider M.H.'s motion for legal custody. While we commend the mother for her recent efforts, her efforts to improve her well-being do not override what is in her children's best interest.

{¶ 33} Consequently, we do not agree with the mother that the trial court abused its discretion by placing the children in M.H.'s legal custody.

## IV.  Conclusion

{¶ 34} Having overruled the mother's sole assignment of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and McFarland, J.: Concur in Judgment and Opinion.


For the Court

By:_____
              Marie Hoover, Presiding Judge


## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.