[Cite as *In re Lu.B.*, 2021-Ohio-4479.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| In the Matter of: | : | Case No. 21CA1 |
| Lu.B., Li.B., Le.B., La.B., | : | |
| | | DECISION AND |
| Adjudicated Dependent Children. | : | JUDGMENT ENTRY |

**RELEASED 12/17/21**

_____

APPEARANCES:

Kathryn Cornelius-Blume, Dagger, Johnston, Miller, Ogilvie & Hampson, LLP, Lancaster, Ohio, for appellant.

Ryan Stickel, Hocking County Prosecutor's Office, Logan, Ohio, for appellee State of Ohio.

Charles A. Gerken, Logan, Ohio, for appellee T.B.

_____

Hess, J.

{¶1}   M.B. ("Mother") appeals from a judgment of the Hocking County Court of Common Pleas, Juvenile Division granting legal custody of her children, Li.B., La.B., Le.B., and Lu.B., to their paternal grandmother.  Mother contends that the trial court erred when it adjudicated Lu.B. a dependent child because its determination was based on the court improperly taking judicial notice of the adjudication proceedings in her siblings' cases.  Mother also contends that the trial court's legal custody decision was against the manifest weight of the evidence.  For the reasons that follow, we reject these contentions and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶2}   Mother and T.B. ("Father") have four children together:  Li.B., La.B., Le.B., and Lu.B.  On March 8, 2019, a magistrate ordered the director of South Central Ohio Job and Family Services (the "Agency") to take Li.B. (then age 7), La.B. (then age 4), and Le.B. (then age 1) into protective custody.  Three days later, the Agency filed complaints in three cases alleging that Li.B., La.B., and Le.B. were abused, neglected, and dependent and requesting a disposition of temporary custody to the Agency. The same day, the court conducted a shelter care hearing and granted temporary custody of the children to M.S., their paternal grandmother.

{¶3}   On May 30, 2019, the court issued an entry adjudicating the children dependent because "Father struck [Li.B.] in the eye leaving a mark," the family home was "deplorable [with] fecal matter, trash, dirty dishes, and clothes piles," the home was condemned by the health department and had a bed bug infestation, Mother had used abusive language with a young child, and there were medical neglect issues.  The court ordered that the children remain in M.S.'s temporary custody with protective supervision by the Agency and scheduled the matter for disposition.  On June 25, 2019, the court issued an entry ordering a disposition of temporary custody to M.S. with protective supervision by the Agency.  In August 2020, the Agency moved the court to grant M.S. legal custody of the three children and terminate protective supervision by the Agency.

{¶4}   In the meantime, in July 2019, Lu.B., was born, and the Agency filed a complaint pertaining to her in a fourth case.  At some point, the Agency had to dismiss the complaint and refile it in October 2020 due to a scheduling issue.  The complaint

alleged Lu.B. was a dependent child and requested a disposition of legal custody to M.S. with protective supervision by the Agency.

{¶5} On December 4, 2020, the trial court conducted an adjudicatory hearing regarding Lu.B. Marni Tucker, an Agency caseworker, testified that she had been the assigned caseworker for the family since June 2018.[1] Tucker testified that when Lu.B. was born, the trial court had already found her siblings dependent, they were in the temporary custody of M.S., and it was not safe to return them to Mother or Father. Tucker testified that she visited the family home prior to becoming the assigned caseworker, and after being assigned, she visited it every month until around August 2020, when Mother and Father split up and moved out. Tucker testified that the home "was not acceptable on any dates" she visited and "was actually condemned at one point." Around the time Lu.B. was born, the home was "deplorable" and "not fit for any children to live there." Tucker testified that the home was "filthy," the kitchen floor had grease on it "that was probably an inch thick," there was trash all over the place, rodents could enter the home through a crack in a door, and there was feces on the window sills. On some days, the home was "completely trashed," there were "dishes completely piled up," and "the house smelled." Tucker testified that she is trained to evaluate homes for safety hazards and that the rodent feces, roaches, filthy flooring, and manner in which certain items were stored posed a safety hazard for the children.

{¶6} During cross-examination, Father's attorney tried to elicit testimony from Tucker about statements Mother made to another Agency employee about marks on

---

[1] Tucker initially testified that she believed she was assigned in June 2019 but then corrected her testimony. It appears her initial testimony may have been correct though because during the final hearing, which also occurred on December 4, 2020, Tucker testified that she had been the assigned caseworker for "[a]bout a year and a half."

Li.B.'s face, and Mother's attorney made a hearsay objection. After the trial court sustained the objection, the Agency's attorney asked the court to "take judicial notice of [its] entry on May 30th, 2019 where the Court found that [F]ather struck [Li.B.] in the eye and * * * all the things the Court found." Mother's attorney objected, asserting that the court could not take judicial notice of orders in the other children's cases or "facts that were found in other cases." The court granted the judicial notice request.

{¶7} The trial court orally found Lu.B. to be a dependent child and immediately proceeded to conduct a dispositional hearing for Lu.B. and a hearing on the legal custody motions pertaining to her siblings (the "final hearing"). Tucker testified that Father had completed most of his case plan goals. However, he did not complete mental health counseling or anger management treatment despite a referral being made through Integrated Services, and he told Tucker that he felt it was in the children's best interest to stay with M.S. because he was "working on himself" and could not yet "take care of himself let alone the children." Tucker opined that Mother had not sufficiently completed her case plan goals to get the children back. Mother completed parenting classes but did not provide documentation to show she was engaged in mental health counseling or anger management treatment until the final hearing. She failed to abstain from illegal drug use. She "always tested positive for THC," and Tucker did not believe she had a medical marijuana card. With regard to the goal of maintaining suitable housing, Tucker testified that the parents were evicted from the family home. Subsequently, Mother reported that she was staying with various friends. However, the Agency received information that she was staying with a boyfriend, and in September 2020, Tucker and Pat Saniga went to that residence to conduct a home visit. Mother refused to let them

enter, claiming it "was not her home and that she was just staying there." Later, Mother gave Tucker a new address, but Tucker was not able to conduct a home visit prior to the final hearing. She tried to visit at the end of October 2020, but Mother was not home. Then, Tucker was out of the office for about a month due to illness. When Tucker returned to work, Mother asked Tucker to not visit because she had been ill, and due to staffing issues, no other caseworker was available to visit the home. Tucker testified Mother had not been allowed to visit the children recently pursuant to a court order prohibiting visits until she got mental health counseling. Tucker opined that Mother and Father could not meet the children's basic needs or provide them with a stable environment. Tucker testified that the children were "doing great" in M.S.'s care, were doing "exceptionally well" in school, and were excelling in counseling.

{¶8}    Pat Saniga, the children's court appointed special advocate and guardian ad litem, opined that it was in the best interest of the children to grant M.S. legal custody and give her discretion with regard to visitation. Father consistently told Saniga that he was "not capable of really taking care of" the children and that the "best place for them" is with M.S. Saniga had "very little contact" with Mother. Before Mother was evicted, they only had contact when Saniga initiated it by going to the family home. After the eviction, Mother "cut off all contact" with Saniga. At one point, Saniga learned where Mother was living and went there with an Agency caseworker, but Mother said Saniga was not allowed to enter without a warrant and could not talk to her unless her lawyer was present. The week before the final hearing, Mother gave Saniga her current address and told Saniga that she could visit if she took her shoes off and wore foot coverings because Mother "keeps her house clean." However, Saniga did not have an opportunity to visit the home

prior to the final hearing.  Saniga testified that she has seen "amazing" positive changes in the children while they have been in M.S.'s care.  The children appear happy, their educational and medical needs are being met, they are making progress in trauma counseling, and they are loved and treated kindly in M.S.'s home.

{¶9}   M.S. testified that she has had temporary custody of the children since March 11, 2019.  M.S. testified that while in her care, the children have attended all of their medical appointments except a few which were cancelled due to illness. M.S. testified that Li.B., La.B., and Le.B. are engaged in counseling and have done well in it.  However, after Mother calls, Li.B. typically "backslides" and needs extra counseling.  M.S. testified that the children love Father and love interacting with him, and if she received legal custody, she would facilitate visitation between the children and both of their parents.

{¶10}  R.F., Mother's father, testified that he is the property manager for six rental properties, including Mother and Father's former home and Mother's current home, which she shares with her boyfriend and his daughter.  R.F. evicted Mother and Father from their former home "because it was disgusting."  R.F. testified that he inspects Mother's current home once a month, and it has always been clean and is safe and adequate for her children.

{¶11}  The trial court issued one judgment entry for all four cases finding Lu.B. to be a dependent child for the following reasons:  "Home was deplorable and condemned. Other children were already adjudicated dependent.  Feces & trash in the home.  Dishes piled up.  Grease in the kitchen.  Crack in the door where rodents could enter.  Unsafe conditions for a child."  The trial court also granted M.S. legal custody of all four children.

The court found the grant of legal custody to be in the best interest of the children because Mother did not have appropriate housing, tested positive for THC, failed to provide "confirmation of counseling until court," failed to provide the Agency access to her home, and failed to visit the children recently due to her failure to complete mental health counseling.  In addition, the court found Father missed anger management treatment, failed to follow through with Integrated Services, and agreed that M.S. should have legal custody.  The court granted Mother and Father visitation at the discretion of M.S. and terminated protective supervision by the Agency.

## II.  ASSIGNMENTS OF ERROR

{¶12}  Mother presents two assignments of error:

1.  The trial court erred as a matter of law when it relied upon prior proceedings to adjudicate [Lu.B.] dependent.

2.  The trial court's decision to grant legal custody of the minor children to paternal grandmother was against the manifest weight of the evidence.

## III.  JUDICIAL NOTICE

{¶13}  In her first assignment of error, Mother contends that the trial court erred as a matter of law when it relied upon prior proceedings to adjudicate Lu.B. dependent. Mother asserts that the trial court improperly took judicial notice of its May 30, 2019 entry adjudicating Li.B., Le.B., and La.B. dependent because a court may not take judicial notice of prior proceedings in other cases, even if they involve the same parties and court as the present case. Mother maintains that the trial court relied on the siblings' adjudication proceedings to adjudicate Lu.B. dependent, so we should reverse the judgment regarding Lu.B. and remand for a new trial.

{¶14} Evid.R. 201 governs judicial notice of "adjudicative facts," i.e., "the facts of the case." Evid.R. 201(A). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B). "A court must take judicial notice if requested by a party and supplied with the necessary information that would allow it to do so. Evid.R. 201(D). Otherwise, it is within the trial court's discretion to take judicial notice. Evid.R. 201(C)." *State v. Isaac,* 4th Dist. Meigs No. 17CA9, 2018-Ohio-5433, 127 N.E.3d 350, ¶ 12.

{¶15} Any error the trial court made in taking judicial notice of the May 30, 2019 entry constitutes harmless error which we must disregard. Civ.R. 61 provides:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

" 'To find that substantial justice has not been done, a court must find (1) errors and (2) that without those errors, the [factfinder] probably would not have arrived at the same [decision].' " (Alterations sic.) *Osborne v. Osborne*, 4th Dist. Washington No. 13CA49, 2015-Ohio-2510, ¶ 35, quoting *Hayward v. Summa Health Sys./Akron City Hosp.,* 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 25.

{¶16} Mother cannot show that the trial court probably would not have found Lu.B. dependent if it had not taken judicial notice of its May 30, 2019 entry. Tucker testified to all of the facts the trial court relied upon in finding that Lu.B. was a dependent child, i.e.,

that her siblings had been adjudicated dependent; that the family home had been condemned, was in deplorable condition, and was unsafe for children; and information about the home containing feces, trash, piles of dishes, grease, and a cracked doorway through which rodents could enter. The trial court did not find Lu.B. dependent based on any information that was exclusively in the May 30, 2019 entry, such as the court's factual findings that "Father struck [Li.B.] in the eye leaving a mark" or that "Mother had used abusive language with a young child." Accordingly, we overrule the first assignment of error.

## IV. LEGAL CUSTODY

{¶17} In her second assignment of error, Mother contends that the trial court's decision to grant M.S. legal custody was against the manifest weight of the evidence. Mother maintains that by the final hearing, she had complied with her case plan. She completed parenting education courses and attended anger management classes and mental health counseling. Mother asserts that she was drug free except for THC and suggests she might have had a medical marijuana card. Mother also claims that she acquired stable housing. She asserts that the Agency was not able to evaluate her home due to COVID-19 concerns, but her father confirmed the home is clean and has "appropriate amenities for the children to ensure their needs and safety." Mother asserts that she had difficulty visiting the children "due to the mandated mental health counseling" but still had contact with them via video.

### A. Standard of Review

{¶18} "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen,* 129 Ohio St.3d 417, 2011-Ohio-3361, 953 N.E.2d 302,

¶ 14. "Consequently, we review a trial court's decision to award a party legal custody of an abused, neglected, or dependent child for an abuse of discretion, and we afford its decision 'the utmost deference.' " *In re E.S.,* 4th Dist. Pickaway Nos. 17CA16 and 17CA17, 2018-Ohio-1902, ¶ 23, quoting *In re E.W.,* 4th Dist. Washington Nos. 10CA18, 10CA19, and 10CA20, 2011-Ohio-2123, ¶ 18. "Ordinarily, '[t]he term "abuse of discretion" implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.' " (Alteration sic.) *Id.,* quoting *In re H.V.,* 138 Ohio St.3d 408, 2014-Ohio-812, 7 N.E.3d 1173, ¶ 8. However, in *Davis v. Flickinger,* 77 Ohio St.3d 415, 418-419, 674 N.E.2d 1159 (1997), the Supreme Court of Ohio explained the abuse of discretion standard that applies in child custody proceedings as follows:

> The standard for abuse of discretion was laid out in the leading case of *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, but applied to custody cases in *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus:

> "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (*Trickey v. Trickey* [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)"

> The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. As we stated in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80-81, 10 OBR 408, 410-412, 461 N.E.2d 1273, 1276-1277:

> "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *

> " * * *

" * * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal."

This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does *not* translate to the record well.

(Emphasis and omissions sic.) "While we might be 'perplexed' by this hybrid abuse-of-discretion-manifest-weight standard, the Ohio Supreme Court has not overruled, modified, or clarified the standard set forth in *Bechtol* or *Davis*." *E.S.* at ¶ 23, quoting *In re A.L.P.*, 4th Dist. Washington No. 14CA37, 2015-Ohio-1552, ¶ 23 (Harsha, J., concurring). "We therefore continue to apply this standard when reviewing child custody matters." *Id.*

### B.  Legal Principles

**{¶19}** Once a court adjudicates a child dependent, R.C. 2151.353(A)(3) authorizes it to make an order of disposition awarding "legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings." In addition, the court "may terminate or modify a prior dispositional order and award legal custody to a nonparent if doing so serves the child's best interest." *E.S.*, 4th Dist. Pickaway Nos. 17CA16 and 17CA17, 2018-Ohio-1902, at ¶ 27.

**{¶20}** "R.C. 3109.04 specifies the best interest factors courts must consider when determining whether to award legal custody to a nonparent." *Id.* at ¶ 28. The court must consider

all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the

offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).

## C.  Analysis

**{¶21}** The trial court did not abuse its discretion when it granted legal custody to M.S. because a substantial amount of credible and competent evidence supports the conclusion that it is in the children's best interest for M.S. to have legal custody.  With respect to the parents' wishes, Mother wanted the children returned to her, but Father wanted them to remain with M.S.  The record does not reflect that the trial court interviewed the children in chambers about their wishes and concerns.  There is evidence that the children have some relationship with Mother and have a good relationship with M.S. and Father.  There is evidence that the children are well-adjusted to M.S.'s home and school, that M.S. takes care of their medical needs, and that they have done well in counseling even though Li.B. requires additional counseling after phone calls with Mother. In addition, there is evidence Mother did not meet all of her case plan goals.  She tested positive for THC, and there is no evidence she had a prescription for it.  There is evidence she delayed going to anger management treatment and mental health counseling, which impacted her ability to visit the children.  Although Mother claims she acquired appropriate housing for the children, the trial court was free to disbelieve her father's testimony to that

effect. Accordingly, we conclude that the trial court did not err when it granted legal custody to M.S., and we overrule the second assignment of error.

## V.  CONCLUSION

**{¶22}** Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
      Michael D. Hess, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**