OPINION
{¶ 1} Appellant, the City of Warren, appeals the trial court's interlocutory judgment denying its motion for summary judgment. We affirm.
 {¶ 2} On July 21, 2003, after extensive rain and flooding, ten-year old Johnny Keytack was riding his bicycle through a flooded street when he was swept into a drainage ditch. The record indicates the boy's leg became lodged in a storm sewer drain which trapped him underwater. Although attempts were made at rescuing the boy, he ultimately drowned.
 {¶ 3} On September 1, 2004, John Keytack, the boy's father (hereinafter "appellee") filed a complaint on behalf of the estate of the decedent against the City of Warren seeking damages for wrongful death. The complaint alleged that the City improperly maintained the sewer drain which caused the decedent's death. Appellee later amended his complaint. Appellee's amended complaint asserted the City negligently maintained the storm sewer drain and its negligence proximately caused the death of Johnny Keytack. Appellee further alleged the City's acts or omissions in maintaining the sewer drain were "reckless, willful, and wanton."
 {¶ 4} On March 3, 2005, appellant moved for summary judgment on appellee's amended complaint. In its motion, appellant asserted it was immune from suit pursuant to R.C. Chapter 2744. In particular, appellant argued the acts or omissions which allegedly led to the incident were protected governmental functions for which there was no exception to immunity. Moreover, even if appellee alleged facts sufficient to overcome general immunity, appellant claimed it would still be entitled to summary judgment pursuant to the defenses and immunities set forth under R.C. 2744.03.
 {¶ 5} Appellee filed his response motion on March 31, 2005. Appellee argued that a genuine issue of fact remained regarding whether appellant was immune from suit under R.C. Chapter 2744. Specifically, appellee asserted appellant's immunity was lifted to the extent the decedent's death was occasioned by appellant's "negligent failure to keep public roads in repair and other negligent failure to remove obstructions therefrom." R.C.2744.02(B)(3). Appellee further asserted that the defenses and immunities did not shield appellant from liability to the extent appellant's conduct in maintaining the sewer drain was "reckless and willful." See, R.C. 2744.03(A)(5). Appellee attached various exhibits to its motion in opposition to appellant's motion for summary judgment including two affidavits, four depositions, the Coroner's Verdict, the police report authored by the Warren City Police Department, and a copy of a page from the Ohio EPA detailing requirements for Wastewater Operator Certification.[1]
 {¶ 6} On November 28, 2005, the trial court denied appellant's motion for summary judgment. Pursuant to R.C.2744.02(C), appellant filed the instant interlocutory appeal and assigns three errors for our consideration. Its first assignment of error queries:
 {¶ 7} "Whether or not the trial court erred in overruling defendant City of Warren's motion for summary judgment where the defendant is entitled to summary judgment pursuant to Chapter 2744 of the Ohio Revised Code[?]"
 {¶ 8} Pursuant to Civ.R. 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any timely filed in the action show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Moreover, "summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C).
 {¶ 9} R.C. Chapter 2744 sets forth a three-tiered analysis for determining a political subdivision's immunity from liability. Greene County Agricultural Society v. Liming,89 Ohio St.3d 551, 556, 2000-Ohio-486. First, R.C. 2744.02(A)(1) codifies the general rule of sovereign immunity, viz., that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." However, this general rule is limited by R.C. 2744.02(B), which sets forth five instances in which a political subdivision is not immune. Hence, the second tier of the analysis requires a court to determine whether any of the exceptions under R.C. 2744.02(B) apply. Finally, if a political subdivision is exposed to liability through the application of R.C. 2744.02(B), a court must consider whether any of the defenses or immunities under R.C. 2744.03 are applicable.
 {¶ 10} Under its first assignment of error, appellant contends the trial court erred in denying its motion because it is entitled to statutory immunity pursuant to R.C. Chapter 2744, Ohio's political subdivision tort liability act. Specifically, appellant argues its management of the storm sewer in question involved a "governmental function" to which no immunity exceptions apply.
 {¶ 11} In response, appellee argues that regardless of whether appellant acted pursuant to its governmental functions in managing the storm sewer, it is not immune from suit because R.C.2744.02(B)(3) excepts from immunity death or injury caused by a political subdivision's "negligent failure to keep public roads in repair" and "remove obstructions" therefrom. Moreover, appellee asserts that even if appellant was capable of reasserting immunity under R.C. 2744.03, there are genuine issues of fact surrounding whether its judgment or discretion was exercised in a "wanton or reckless manner." R.C. 2744.03(A)(5). Thus, the trial court properly denied appellant's motion for summary judgment.
 {¶ 12} As it is pivotal to our ultimate resolution, we shall first examine whether the alleged acts or omissions leading to appellee's wrongful death suit are of a "governmental" or "proprietary" nature. R.C. 2744.01(C)(1) describes a "governmental function" as:
 {¶ 13} "* * * [A] function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:
 {¶ 14} "(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
 {¶ 15} "(b) A function that is for the common good of all citizens of the state;
 {¶ 16} "(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified * * * as a proprietary function."
 {¶ 17} R.C. 2744.01(C)(2) sets forth a non-exhaustive list of examples of activities which are statutorily defined governmental functions. Subsection (C)(2)(1) specifies as a governmental function "[t]he provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system." Division (C)(2)(r) additionally includes as a governmental function "[f]lood control measures."
 {¶ 18} Alternatively, R.C. 2744.01(G)(1) defines "proprietary function" as: "* * * [A] function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:
 {¶ 19} "(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;
 {¶ 20} "(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by non-governmental persons."
 {¶ 21} R.C. 2744.01(G)(2) provides a non-exhaustive list of proprietary functions, among which is "the maintenance, destruction, operation, and upkeep of a sewer system." R.C.2744.02(G)(2)(d).
 {¶ 22} With the foregoing guidance, we draw the following conclusions: Appellee may not attack the design or construction of the sewer drain in question using a theory of negligence. R.C.2744.01(C)(2)(1); see, also, Hedrick v. City of Columbus (Mar. 30, 1993), 10th Dist. Nos. 92AP-1030 and 92AP-1031, 1993 Ohio App. LEXIS 1874, at 12. However, he may challenge the lack of proper maintenance under R.C. 2744.01(G)(2)(d). Thus, negligent repair or upkeep of a sewer is an actionable proprietary function under Ohio's Political Subdivision Tort Liability Act. Hedrick,
supra; see, also, Duvall v. City of Akron, 9th Dist. No. 15110, 1991 Ohio App. LEXIS 5381.
 {¶ 23} Appellant attempts to characterize the lack of maintenance on the drain at issue as a "flood control measure" pursuant to R.C. 2744.01(C)(2)(r). We believe appellant's construction is unreasonable. Were we to accept appellant's characterization, the proprietary functions of sewer maintenance, operation, and upkeep would be swallowed by and transformed into the governmental function of "flood control." Hedrick, supra, at 12. Classifying all ordinary sewer maintenance as a governmental function would render R.C. 2744.01(G)(2)(d) a mere nullity. As we must give effect to the language of a statute, we decline to accept appellant's argument. Rosette v. CountrywideHome Loans, Inc., 105 Ohio St.3d 296, 298, 2005-Ohio-1736. As such, the trial court did not err in denying appellant's motion for summary judgment.
 {¶ 24} Although we find appellant's argument unpersuasive, we also believe appellee's argument is unsound. Appellee's argument relies upon the exception to immunity set forth under R.C.2744.02(B)(3). R.C. 2744.02(B)(3) provides, in relevant part:
 {¶ 25} "* * * political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *."
 {¶ 26} Appellee argues that excessive water on a public roadway is tantamount to an obstruction and therefore appellant is not immune from liability. In support, appellee cites Heltonv. Sciota Bd. of County Cmmrs. (1997), 123 Ohio App.3d 158. InHelton, an individual was driving on a flooded road over which torrents of water were flowing. Due to the excess water, the driver lost control and struck the appellant's oncoming van. The appellant and his passengers were injured. They subsequently filed suit asserting the county was negligent in maintaining the ditch into which the water should have drained. They argued that the county was not immune from liability because the condition of the road was a nuisance for which the county was liable under former R.C. 2744.02(B)(3).[2] The county moved for and was awarded summary judgment.
 {¶ 27} On appeal, the Fourth Appellate District reversed and remanded the matter holding genuine issues of material fact existed as to whether the condition of the road was a nuisance. Although tacit in its language, former R.C. 2744.02(B)(3) did not explicitly except from liability a political subdivision's failure to remove obstructions. By implication, the court inHelton did not hold the flood water was an "obstruction." Accordingly, the authority upon which appellee bases his position is not on point.
 {¶ 28} That said, we do not believe current R.C.2744.02(B)(3) applies to the instant matter. The decedent's drowning was not a direct result of appellant's negligent failure to maintain or remove obstructions from public roads. Appellee's complaint asserts appellant is liable because of its negligent failure to maintain a storm sewer in which the decedent's leg was trapped during a flooding episode in 2003. The record indicates the storm sewer was situated adjacent to the public road on which the decedent was riding his bicycle. Although the decedent was swept from the road by the excessive water into the ditch housing the drain, his death was not occasioned by negligent road maintenance or upkeep.
 {¶ 29} This conclusion notwithstanding, appellee's complaint alleges appellant is liable for its negligence in a proprietary function, viz., the maintenance and upkeep of a storm sewer. R.C.2744.01(G)(2)(d). R.C. 2744.02(B)(2) provides, in relevant part:
 {¶ 30} "* * * political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."
 {¶ 31} Any alleged negligence in maintaining or failing to maintain a storm sewer would be classified as a proprietary function which creates a genuine issue of material fact regarding whether R.C. 2744.02(B)(2) is applicable to lift immunity.
 {¶ 32} Although not explicitly argued, it is worth noting that appellant, in an attempt to re-assert immunity, alleged the following defenses pursuant to R.C. 2744.03(A):
 {¶ 33} "(2) The political subdivision is immune from liability if the conduct of the employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the political subdivision or employee.
 {¶ 34} "(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
 {¶ 35} "* * *
 {¶ 36} "(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 37} With respect to appellant's R.C. 2744.03(A)(2) defense, appellee alleged the City, by and through its employees, were negligent in the maintenance of the sewer. An issue of fact exists regarding whether appellant was negligent. Hence, appellant was not entitled to summary judgment by operation of this statutory subsection. Further, the record is unclear as to whether the failure to maintain the sewer was a discretionary planning decision of the office of the Director of the City of Warren's Wastewater Treatment Plant or any other relevant city official. As such, R.C. 2744.03(A)(3) may not be used as a premise for appellant's reassertion of immunity. Finally, appellant's R.C. 2744.03(A)(5) defense is based upon its assertion that the accident was a result of its decision on how to use equipment, supplies, materials, personnel, facilities, and/or other resources and thus it is immune from suit. However, appellee's amended complaint alleges appellant acted in a "wanton and reckless" manner in failing to maintain the storm sewer in question. Thus, appellant may not premise its immunity argument in R.C. 2744.03(A)(5).
 {¶ 38} Based upon the foregoing analysis, we hold there remain genuine issues of material fact necessitating litigation. Thus, appellant's first assignment of error is overruled.
 {¶ 39} Appellant's second assignment of error reads:
 {¶ 40} "Whether or not the trial court erred overruling defendant City of Warren's motion for summary judgment where appellee did not file an affidavit sufficient to oppose the appellants' [sic] supported motion for summary judgment[?]"
 {¶ 41} Under its second assignment of error, appellant initially contends appellee's motion in opposition to appellant's motion for summary judgment did not properly comport with Civ.R. 56 because his affidavits were not made on personal knowledge. See, Civ.R. 56(E). We disagree and hold the affidavits of Mathew Byland and Thomas Bator both set forth specific evidence gleaned from their own personal knowledge of the incident in question.
 {¶ 42} In his affidavit, Mathew Byland, a friend of the decedent, described the events leading up to the decedent being trapped in the drain. Specifically, Byland related that he, the decedent and another friend were "playing in the field where the transformers are." When he heard sirens, he left on his bicycle; however, he ultimately returned and discovered the decedent "was in the water" and the other boy was trying to "pull him out." Byland stated he then left to call 911. Although not dispositive of liability, Byland's affidavit demonstrates a firsthand account of what occurred after the decedent was swept into the ditch where the storm sewer was located; in particular, Byland's affidavit communicates the general difficulty would-be rescuers had extricating the decedent from the sewer. This evidence is probative of appellee's allegation that appellant negligently failed to maintain the sewer drain in question. In our view, the document was properly before the court for purposes of a Civ.R. 56(C) exercise.
 {¶ 43} Further, Bator's affidavit asserts he had complained about the area in question to Al Novak, a member of Warren City Counsel, had spoke about the problem at Warren City Counsel meetings, and spoke to former Warren Mayor Daniel Sferra about the problem. Such testimony serves to show appellant was on notice that the storm sewer in question was ill-maintained. Bator's affidavit was "made on personal knowledge" and also comports with Civ.R. 56.
 {¶ 44} Appellant additionally asseverates that various materials submitted with appellee's motion in opposition, viz., the depositions, coroner's verdict sheet, Warren City Police Report, coroner's photos, and Ohio EPA report, were not properly before the court. Civ.R. 56(C) permits a court to consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcript of evidence, and written stipulations of fact, if any, timely filed in the action * * *." Only evidence of the type set forth in Civ.R. 56 may be considered during a summary judgment exercise. Martin v. CentralOhio Transit Authority (1990), 70 Ohio App.3d 83, 88. "In applying the foregoing rule, the courts of this state have consistently held that if a particular item of evidence does not fall within one of the stated categories, the only manner in which the item can be introduced for summary judgment purposes is `to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E).'" Humphrey v. Scottish Lion Ins. Co.
(Mar. 15, 1996), 11th Dist. No. 94-T-5099, 1996 Ohio App. LEXIS 974, at 20, quoting Biskupich v. Westbay Manor Nursing Home
(1986), 33 Ohio App.3d 220, 222.
 {¶ 45} We point out that appellant did not object to this irregularity. While many of the documents submitted by appellee do not fall within the ambit of evidence set forth under the civil rule, "`a trial court may properly consider documents other than those specified in Civ.R. 56(C) when no objections are raised.'" Dietelbach v. Ohio Edison Co., 11th Dist. No. 2004-T-0063, 2005-Ohio-4902, at ¶ 15, citing, Reynolds v.Morris (Sept. 28, 1999), 10th Dist. No. 99AP-64, 1999 Ohio App. LEXIS 4505, 7. The trial court therefore properly considered appellee's motion in opposition along with its various appended exhibits.
 {¶ 46} However, assuming arguendo that the trial court improperly considered the materials not listed under Civ.R. 56(C), we nevertheless believe appellee set forth adequate evidence to overcome summary judgment. That is, appellee's affidavits and depositions were properly before the court and contain testimony adequate to create a genuine issue of material fact independent of the additional materials. Therefore, even if the evidence in question were inappropriate, it would be extraneous and the court's consideration of the same would be harmless.
 {¶ 47} In sum, the affidavits submitted with appellee's motion in opposition were made on personal knowledge and, taken in conjunction with the pleadings and depositions, set forth material issues of fact sufficient to overcome appellant's motion for summary judgment. Appellant's second assignment of error lacks merit.
 {¶ 48} Appellant's third assignment of error poses:
 {¶ 49} "Whether the trial court erred in overruling appellant City of Warren's motion for summary judgment where the court ruled sub silento [sic] appellant's motion was not well-taken as a matter of law[?]"
 {¶ 50} In its final assignment of error, appellant argues the trial court erred in denying its motion because in doing so it overruled past precedent sub silentio.[3] To wit, appellant argues the Tenth Appellate District's decision in Hedrick,
supra, is fundamentally analogous to the instant matter and, as such, bound the trial court to ruling in its favor. We disagree.
 {¶ 51} We first note that Hedrick is, at best, persuasive authority. We are bound by the decisions of the Supreme Court of Ohio and generally, by past precedent produced by our own district. Decisions from our sister districts, while assistive and many times highly persuasive, neither bind this court nor the various trial court's within its jurisdiction. Thus, the trial court did not (and could not) overrule Hedrick sub silentio because Hedrick was decided by an appellate district of separate jurisdiction.
 {¶ 52} That said, we believe the trial court's decision was perfectly consistent with the decision in Hedrick. In fact, when read as a whole, Hedrick lends more support to appellee's case than appellant's. In Hedrick, the plaintiffs filed suit alleging the City of Columbus and Franklin County breached duties of care by negligently failing to maintain a culvert which caused significant property damage as a result of a "one-hundred-year" rain. In particular, the plaintiffs contended the City and/or the County owed them a special duty arising from statements made by the mayor of Columbus after the rain assuring residents that "the storm water problems would be fixed or their homes would be purchased." Id. at 5. The court initially held that neither the city nor the county owed the plaintiffs a "special duty" to maintain the culvert to the extent plaintiffs failed to demonstrate justifiable reliance, a necessary element of a "special duty." That is, the court stated:
 {¶ 53} "A municipality will be bound only by representations authorized to be made by its officers or agents. * * * Manifestly, a mayor has no authority to enact sewer improvements or exercise the power of eminent domain." Id. at 9.[4]
 {¶ 54} The court ultimately held there were genuine issues of material fact regarding (1) whether the city negligently maintained the storm sewer pursuant to R.C. 2744.01(G)(2)(d) because "negligent repair of a sewer is an actionable proprietary function under the act." Id. at 13, and (2) whether the city's failure created a nuisance pursuant to former R.C. 2744.02(B)(3). The city urged that R.C. 2744.03(A)(3) allowed them to reassert immunity for discretionary decisions made by its officials in the course of managing the sewer. However, the court declined to address this argument as "there [was] absolutely no evidence that any such decision was actually made by city officials." Id. at 19. The case was accordingly reversed and remanded.
 {¶ 55} Here, like Hedrick, we hold appellee offered sufficient evidence to create an issue of material fact regarding whether the death in question was caused by the negligent performance of the city employees with respect to a proprietary function. R.C. 2744.02(B)(2). As such, Hedrick offers little, if any, support for appellant's position. The holding inHedrick was neither overruled nor undermined by the trial court's decision.
 {¶ 56} Finally, appellant makes the peculiar assertion that the trial court's decision is the "law of the case" and thus, without a cross-appeal, appellee is not permitted to argue factual issues. Appellant misapplies the law of the case doctrine. The law of the case doctrine is a rule of judicial hierarchy whereby "the decision of a reviewing court in a case remains the law of the case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3. Appellant's formulation of the law of the case doctrine turns the rule on its ear. If the trial court's decision were the law of the case, appellant's appeal would be inconsequential ab initio. Such a construction is fundamentally unreasonable. A lower court's order is not the law of the case which binds a reviewing court on a subsequent appeal; rather, the decision of the reviewing court reversing and remanding a matter to a lower court establishes the "law of the case."
 {¶ 57} While appellant is correct that appellee may not challenge or impeach the trial court's decision without filing either a cross-appeal or a cross-assignment of error, we do not believe appellee is challenging the trial court's judgment entry. Rather, appellee's brief is a response to appellant's assigned errors citing facts set forth in or established by pleadings, affidavits, depositions, etc. Such a rejoinder does not violate appellate procedure. Appellant's final assignment of error lacks merit.
 {¶ 58} For the above stated reasons, appellant's three assignments of error are overruled and the judgment of the Trumbull County Court of Common Pleas is hereby affirmed.
Colleen M. O'Toole, J., concurs,
DiANE V. Grendell, J., dissents.
[1] Although many of the exhibits attached to appellee's motion in opposition are outside the purview of Civ.R. 56, appellant did not object to the trial court's consideration of said materials. This issue, however, will be addressed with greater attention under appellant's second assignment of error, infra.
[2] Former R.C. 2744.02(B)(3) stated, in relevant part: "* * * political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the public subdivisions open, in repair and free from nuisance * * *."
[3] "Sub silentio" is a latin term which literally means "under silence." Technically, the term is used to denote a situation where an opinion reaches a conclusion contrary to what is ostensibly controlling authority. Under these circumstances, the later case, by necessary implication, has overruled the prior holding "sub silentio."
[4] Notwithstanding its substantive analysis, the court underscored that the enactment of R.C. Chapter 2744 abrogated the "public duty/special duty" theory of municipal liability.Hedrick at 9, citing, Ambroski v. Toledo (1990),67 Ohio App.3d 47, 51.