[Cite as *Stephens v. Spahn*, 2025-Ohio-4509.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| CHRISTINA STEPHENS, ADMINISTRATRIX OF THE ESTATE OF ALTON OWENS, DECEASED, | : | CASE NO. CA2024-11-022 |
| | : | |
| Appellant, | : | OPINION AND JUDGMENT ENTRY 9/29/2025 |
| | : | |
| - vs - | : | |
| | : | |
| MITCHELL SPAHN, M.D., ET AL., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CVA 20170112

The Becker Law Firm, and Michael F. Becker, and David W. Skall; and Flowers & Grube, and Paul W. Flowers, Louis E. Grube and Kendra N. Davitt, for appellant.

Arnold Todaro Welch & Foliano, and Gregory B. Foliano, Frederick A. Sewards, and John B. Welch; and McKeen & Associates, PC, and John LaParl and Todd C. Schroeder, for appellees, Mitchell Spahn, M.D, and Columbus Obstetricians-Gynecologists, Inc. dba Obstetrics Gynecology - London.

Calderhead Lockmeyer & Peschke, and Joel L. Peschke and David S. Lockemeyer, for appellee, Madison County Hospital, Inc.

Dave Yost, Ohio Attorney General, and Joseph M. McCandish Assistant Ohio Attorney General, for appellee, State of Ohio Department of Medicaid.

## O P I N I O N

**SIEBERT, J.**

{¶ 1}   Christina Stephens, Administratrix of the Estate of Alton Owens, deceased, appeals the decision by the trial court dismissing her wrongful death claim against Mitchell Spahn (the "Doctor"), M.D., Columbus Obstetricians-Gynecologists, Inc (the "Practice Group"), and Madison County Hospital (the "Hospital") (collectively, the "appellees").

{¶ 2}   Stephens argues the trial court erred in dismissing her wrongful death claim because the applicable statutes of limitations and repose were tolled until Owens' death. Alternatively, Stephens argues Ohio's statutes of limitations and repose are unconstitutional. We disagree with the former argument and need not address the latter. Stephens' arguments on appeal conflate important distinctions between medical malpractice claims and wrongful death claims, including who brings those claims, when they must do so, and who benefits from each type of claim. Moreover, Stephens' arguments as to the constitutionality of Ohio's statutes of limitation and repose were never asserted in her pleadings or sufficiently argued at the trial level and are thus waived on appeal. We affirm the judgment of the trial court.

### Factual and Procedural Background

{¶ 3}   This case involves claims arising from obstetrical care during the labor and delivery of Owens on August 6, 2011, at the Hospital. Stephens, Owens' mother, filed a complaint in August of 2016 alleging Owens' medical negligence claims and her own loss of consortium claims against the appellees. Stephens also asserted Civ.R. 10 ("Form of Pleadings"), R.C.2323.43 (pertaining to compensatory damages), R.C. 2315.18 (pertaining to damages caps), and R.C. Chapter 2744 (the "Political Subdivision Tort

- 2 -

Liability Act") were unconstitutional. Owens passed away on August 16, 2016. On December 7, 2016, Stephens filed a first amended complaint and added wrongful death and survivorship claims arising from Owens' passing.[1]

{¶ 4} In October of 2018, the Hospital filed a motion for judgment on the pleadings asserting that Stephens' wrongful death claim was time-barred pursuant to Ohio's four-year medical claim statute of repose. *See* Civ.R. 12(C); R.C. 2305.113(C). In December of 2018, the trial court granted the Hospital's motion for judgment on the pleadings as to Stephens' wrongful death claim (the "2018 Order"). The 2018 Order stated "[t]here is no just cause for delay." *See* Civ.R. 54(B). Although the record, via a "Certification Sheet," indicates counsel were sent a "Decision & Entry," the 2018 Order did not contain a direction to the clerk to serve it on all parties. Nor did the certification sheet contain the addresses where the clerk sent the 2018 Order.

{¶ 5} Stephens did not file an appeal, and the case continued for years. In June of 2019, Stephens filed a second amended complaint adding subrogated parties and reasserting the wrongful death claim, but on the Hospital's motion, the trial court again dismissed the wrongful death claim in July of 2019. This dismissal entry did not include the "no just cause for delay" language. In September of 2024, Stephens moved the trial court to clarify whether the 2018 Order applied to all parties or only the Hospital. In October of 2024, the trial court granted the motion to clarify and confirmed the 2018 Order "dismissed the wrongful death claim in its entirety as to all Defendants" (the "Clarifying Order").

{¶ 6} Stephens later voluntarily dismissed her remaining claims against all parties without prejudice pursuant to Civ.R.41(a) and filed this appeal. The appellees filed

---

1. While Stephens originally filed in the Franklin County Court of Common Pleas, that court transferred the case to the Madison County Court of Common Pleas in May of 2017.

motions to dismiss Stephens' appeal as untimely. They assert Stephens' time to appeal began to run when the 2018 Order was entered and not when the Clarifying Order was entered.[2]

### Timeliness of Appeal

{¶ 7} Before we reach Stephens' only assignment of error, we address the appellees' argument that this court lacks subject matter jurisdiction to consider Stephens' appeal because it was untimely filed after the 2018 Order. Stephens argues that the time to appeal the 2018 Order did not commence because the trial court and clerk failed to comply with Civ.R. 58(B).

{¶ 8} Trial court judgments must contain a direction to the clerk to serve the judgment on all parties, and the clerk must notate the date of service on the docket. Civ. R. 58(B). Service of the notice of judgment is not completed until the clerk notes such service on the appearance docket, complete with the names and addresses of the parties. *Clermont Cty. Transp. Improvement Dist. v. Gator Milford, L.L.C.*, 2015-Ohio-241, ¶ 3.[3] Additionally, the time for a party to appeal does not commence until the clerk completes service of notice of the judgment pursuant to Civ.R. 58(B). App.R. (4)(A). "There is no exception to the requirement[s]" of Civ.R. 58(B). *Gator Milford* at ¶ 3.

{¶ 9} The 2018 Order stated there was no just cause for delay pursuant to Civ.R.

---

2. This court's magistrate denied the motions to dismiss the appeal, and we affirm and adopt the magistrate's decision here.

3. The requirement for the clerk to note the addresses of the parties where notice was sent is part of the binding precedential law from *Gator Milford*. Rep.Op.R. 2.2 (2012) ("The law stated in an opinion of the Supreme Court shall be contained in its text, including its syllabus, if one is provided, and footnotes"). The court stated that including parties' names and addresses on the docket ensure there is "no question" of whether service was perfected according to Rule 58. *Id*. at ¶ 3. This statement is not unbinding dicta but instead fundamentally addresses the question of whether actual knowledge can be a sufficient substitute for service. Actual knowledge as a substitute was specifically rejected by the court because in that circumstance, an appellate court would improperly turn into a fact finder on the question of actual knowledge. *Id*. at ¶ 2.

- 4 -

54(B), making it a final appealable order[4] despite the pendency of other claims against the parties. However, the 2018 Order does not include a specific direction for the clerk to serve the judgment on the parties—it only contains the language, "It Is So Ordered." While the docketed Certification Sheet indicates counsel were sent a "Decision & Entry," this does not satisfy the requirements of Civ.R. 58(B) or *Gator Milford* because it does not include the addresses of the persons served.[5] Because the 2018 Order did not comply with the requirements of Civ.R. 58(B) and *Gator Milford,* the time to appeal did not start to run in 2018, and the appeal from the Clarification Order is timely, pursuant to App.R. 4(A).

{¶ 10} Having concluded Stephens' appeal was timely, we must next examine the appropriate standard of review.

**Standard of Review**

{¶ 11} "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the [non-moving party] could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). A motion for judgment on the pleadings "requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law." *Id.* As a result, "[t]he appellate court uses a de novo standard of review when evaluating a judgment on the pleadings." *Hellmuth v. Stephens*, 2023-Ohio-4592, ¶ 48 (12th Dist.).

---

4. Upon our review of the record, the trial court and parties could have avoided much confusion with a more careful consideration and application of Civ.R. 54(B) and Civ.R. 58(B).

5. "[W]hile the document in the record may indicate that the clerk served the parties by hand, this document does not appear to comply with the Ohio Supreme Court's directive in *Gator Milford*. The clerk did not indicate on the docket the names and addresses of the parties who were served, the method of service, or the costs associated with the service." *Matter of E.S.*, 2018-Ohio-1902, ¶ 22 (4th Dist.).

**Stephens' Assignment of Error**

{¶ 12} In her single assignment of error, Stephens argues the trial court erred as a matter of law in granting judgment on the pleadings. However, Stephens raises three distinct issues within this assignment of error. We will address each in turn.

*Issue #1—The Statutes of Limitations, Repose, and Application of Tolling Statute*

{¶ 13} First, Stephens argues that because Owens was a minor before his death, the applicable statutes of limitations and repose were tolled until his death, making dismissal of Stephens' wrongful death claim improper. We disagree.

*Wrongful Death, Medical Malpractice, and "Medical Claims"*

{¶ 14} Wrongful death actions are "special statutory action[s]" that do not exist at common law. *Rossi v. Atrium Med. Ctr.*, 2023-Ohio-984, ¶ 22 (12th Dist.), citing R.C. 2125. As a result, the parameters of wrongful death actions are regulated by statute, including who may bring the action, the persons for whose benefit the action may be brought, and the time within which the action must be commenced under associated statutes of limitations and repose. *See id.* Wrongful death claims may be brought [w]hen the death of a person is caused by the wrongful act, neglect, or default . . . [of] the person who would be liable if death had not ensued . . ." R.C. 2125.01. As applicable here, wrongful death actions "shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the . . . parents of the decedent, [who is] rebuttably presumed to have suffered damages by reason of the wrongful death . . ." R.C. § 2125.02(A).

{¶ 15} The Supreme Court of Ohio definitively held that "[w]rongful-death claims based on medical care are clearly and expressly included in [the] broad definition of 'medical claim' [in R.C. 2305.113] . . . Therefore, they are expressly within the scope of the medical-claim statute of repose unless another statutory provision negates their

- 6 -

inclusion." *Everhart v. Coshocton Cnty. Mem. Hosp.*, 2023-Ohio-4670, ¶ 13, quoting R.C. 2305.113(E)(3). A "Medical claim" is defined as "any claim that is asserted in any civil action against a physician . . . [or] hospital . . . and that arises out of the medical diagnosis, care, or treatment of any person." R.C. 2305.113 (E)(3).

*Statutes of Limitations and Repose*

{¶ 16} Generally speaking, "[a] statute of limitations establishes a 'time limit for suing in a civil case, based on the date when the claim accrued ([such] as when the injury occurred or was discovered).'" *Antoon v. Cleveland Clinic Found.*, 2016-Ohio-7432, ¶ 11, quoting Black's Law Dictionary 1636 (10th Ed.2014). Meanwhile, "[a] statute of repose bars 'any suit that is brought after a specified time since the defendant acted . . . even if this period ends before the plaintiff has suffered a resulting injury.'" *Id.*, quoting Black's Law Dictionary 1637 (10th Ed.2014).

{¶ 17} Ohio's statute of limitations requires a medical claim to be commenced within one year of the action vesting, unless tolled. R.C. 2305.11; R.C. 2305.16. Medical claims vest when an injury stemming from medical care is "discover[ed] or in the exercise of reasonable care and diligence should have [been] discovered." *Ruther v. Kaiser*, 2012-Ohio-5686, ¶ 17. Ohio's statute of repose, on the other hand, requires medical claims to be commenced within four years of the act that serves as the basis for the claim. R.C. 2305.113(C). The statute of repose "give[s] medical providers certainty with respect to the time within which a claim can be brought and a time after which they may be free from the fear of litigation." *Ruther* at ¶ 19.

*Tolling Statute*

{¶ 18} If the person entitled to bring a medical claim is a minor at the time the cause of action ensues, the statute of limitations does not begin (or "tolls") until that person reaches the age of majority. R.C. 2015.16. However, a representative of the minor may

sue on his behalf before the minor reaches the age of majority. *See id*.; Civ.R. 17. In addition, when an interest of another party is "joint and inseparable" to the interest of the minor, tolling applies to the inseparable claim. R.C. 2015.16.

*Statutory Analysis*

{¶ 19} Stephens argues the trial court incorrectly ruled Owens was not a "party" to the wrongful death action and erred by not applying the tolling statute to that action because Stephens, as Owens' representative, also had to bring his medical negligence claim which was subject to the tolling statute. Civ.R. 17(B). However, we conclude the trial court correctly focused not on the "party" bringing the wrongful death action, but on who *benefits* from what injuries. Even though the same "nominal party" (Stephens) brings both actions, the negligence claim is Owens' survival action and provides recovery for *his own injuries before death*. *Peters v. Columbus Steel Castings Co.*, 2007-Ohio-4787, ¶ 7, 11. That action is independent and separate from the wrongful death action, which provides recovery for Owens' beneficiaries for *their injuries resulting from the death*. *Id.* Thus, the trial court's reasoning correlated the relevant *beneficiary* to the relevant action and injury, not whether a minor could be a *named* party in each action.

{¶ 20} Again, while both are "medical claims" and may stem from the same underlying event, wrongful death claims are distinct from malpractice claims. *See Thompson v. Wing*, 70 Ohio St.3d 176, 179 (1994). As a result, there are important differences in when and by whom each claim can be asserted. *Id.* Before death, a malpractice or medical negligence claim can be brought by injured persons or their representative, and derivative claims such as loss of consortium may be brought by others in their own individual capacities. *See id.;* R.C. 2305.113. After death, however, an injured party's representative may bring two claims on behalf of two different beneficiaries: (1) a survival action on behalf of the decedent based on the malpractice which led to the

injury and death, and (2) a wrongful death action on behalf of the decedent's beneficiaries based on the injuries the beneficiaries suffered *after* the death. *Thompson* at 179.

{¶ 21} Stephens contends the "proper focus" of the tolling statute should not be on who the "plaintiff" is, but rather on who is the "real party in interest." Contrary to Stephens' assertions, the trial court did just that because it focused on who would benefit from the different injuries present in this case. As this court has previously recognized, "[a] real party in interest is one who receives a direct benefit or injury based on the outcome of the case." *Drew v. Weather Stop Roofing Co., LLC*, 2020-Ohio-2771, ¶ 14 (12th Dist.).

{¶ 22} In a wrongful death claim, Stephens' injuries (in her individual capacity as his mother) results from Owens' death, making *her* the real party in interest. *Mullins v. Comprehensive Pediatric & Adult Medicine, Inc.*, 2009-Ohio-1310 ¶ 83 (7th Dist.). As the representative of Owens' estate, Stephens is also the party "entitled" to bring a *wrongful death claim* on her own behalf. R.C. 2125.01; *Thompson* at 179. Stephens' assertions that Owens is the real party in interest in a wrongful death claim and that she is suing on his behalf therefore lack merit because Stephens, not Owens, receives the benefit from a wrongful death claim based upon Owens death. Owens therefore cannot be the real party in interest "entitled" to bring such a claim.

{¶ 23} As Stephens is the real party in interest and not a minor, the tolling statute cannot apply to *her* wrongful death claim. It therefore had to be commenced within "four years after the occurrence of the act or omission constituting the alleged basis" of the claim. R.C. 2305.113(C). Owen's delivery occurred on August 6, 2011, meaning Stephens' complaint needed to be filed by August 6, 2015. But Stephens originally filed her wrongful death claim on August 3, 2016, more than four years after Owen's birth. The wrongful death claim was thus barred under the statute of repose, unless it was inseparable from the other claims. It was not.

{¶ 24} No one disputes the timeliness of the medical negligence claim or Stephens' derivative loss of consortium claim stemming from it. "[B]ecause a parent's claim for loss of consortium against a third party for injuries to the parent's minor child is an interest that is 'joint and inseparable' from the child's own claim for purposes of [the tolling statute], the parent's claim may be tolled during [a] child's disability." *Fehrenbach v. O'Malley*, 2007-Ohio-971, ¶ 22. Stephens' argument that her wrongful death claim is "joint and inseparable" from the negligence claim is incorrect because, again, wrongful death claims are "independent causes of action, not derivative actions." *Everhart*, 2023-Ohio-4670, at ¶ 27, citing *Thompson* at 183.[6] Therefore, tolling does not apply to Stephens' wrongful death claim.

{¶ 25} Ultimately, Stephens' arguments on appeal seek to create confusion where there is none. Tolling only applies to claims that, if successful, will benefit (1) a minor (or the minor's estate) when injured in the event giving rise to his or her claim, and (2) people who have claims that are "joint and inseparable" (i.e., derivative) from the minor's claim, such as a parent's loss of consortium claim. Stephens' wrongful death claim satisfies neither requirement. First, if successful, it would benefit Stephens individually, not Owens' estate. Second, wrongful death is a separate, independent cause of action (i.e. *not* derivative), meaning it is not joint and inseparable from Owens' claims. *Everhart* at ¶ 27.

*Issue # 2—"Relation Back"*

{¶ 26} Stephens argues her first amended complaint on December 7, 2017 (asserting wrongful death), "relates back" to originally filed suit on August 3, 2016 (asserting medical negligence). It is true that claims or defenses in "amended pleading[s]

---

6. This lack of inseparability is further evidenced by the fact that Stephens' voluntarily dismissed the medical negligence and loss of consortium claims, leaving *only* the wrongful death claim on appeal. A claim cannot be "joint and inseparable" if it survives after the dismissal of the allegedly inseparable claim. *See Everhart v. Coshocton Cnty. Mem. Hosp.*, 2023-Ohio-4670, ¶ 27.

[which] arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . relate[] back to the date of the original pleading." Civ.R. 15(C). But relation back does not help Stephens. The original and both amended complaints were still filed more than four years after the occurrence of the act or omission serving as the basis for the medical claim—Owens' birth. Therefore, the wrongful death claim remains barred by the statute of repose even if relation back applies.

*Issue #3—Constitutional Considerations*

{¶ 27} Finally, Stephens argues that application of the statute of repose to time-bar her wrongful death claim is unconstitutional and denies her due process and equal protection of the law. She reasons that because Owens did not pass away until after the expiration of the four-year statute of repose period, it was impossible for her to have timely asserted the wrongful death claim.

{¶ 28} Put simply, we conclude Stephens waived this claim and argument. Stephens' second amended complaint is the operable complaint in this case. It included the wrongful death claim but only challenged the constitutionality of R.C. 2323.43 (pertaining to compensatory damages) R.C. 2315.18 (pertaining to damages caps), and R.C. Chapter 2744 (the "Political Subdivision Tort Liability Act"). Nowhere does it challenge the constitutionality of Ohio's statute of repose, R.C. 2305.113(C).

{¶ 29} Indeed, our review of the record reveals Stephens first mentioned the purported unconstitutionality of the statute of repose in her second response (filed without leave of court) to the Hospital's motion for judgment on the pleadings. That response stated:

> The Ohio Constitution states, "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Ohio Constitution, Article I, Section 16. By granting

> Defendants' Motion, Plaintiffs would be deprived of their constitutional right to bring forth their legitimate wrongful death claim. As indicated by the Article I, Section 16 of the Ohio Constitution, denial of ones' right to seek justice under the law for an injury sustained is a violation of their due process.

{¶ 30} The foregoing is the full extent of Stephens' constitutional arguments at the trial court. The Supreme Court of Ohio established long ago that appellate "courts will not consider a question [much less a claim] not presented, considered or decided by a lower court." *Kalish v. Trans World Airlines, Inc.*, 50 Ohio St.2d 73, 79 (1977). The trial court did not consider or decide Stephens' constitutional arguments raised in her second response in either the 2018 Order or the Clarifying Order. Stephens' perfunctory, unconsidered, and procedurally infirm constitutional arguments at the trial level "simply appear[] to be [an] attempt to amend [the] complaint after the fact to raise a new unpleaded claim." *Adena at Miami Bluffs Condominium Owners' Assn., Inc. v. R. Hugh Woodward*, 2021-Ohio-3872, ¶ 41 (12th Dist.). This court will not consider such an attempt.

{¶ 31} Stephens' single assignment of error is overruled.

**Conclusion**

{¶ 32} We acknowledge, as other courts have, the harsh results that can stem from Ohio's statute of repose which seeks to balance the competing equitable interests of medical professionals, injured patients, and their families. *Ruther*, 2012-Ohio-5686, ¶ 33, citing *Aicher v. Wisconsin Patients Comp. Fund,* 237 Wis.2d 99, ¶ 50 (2000). However, this outcome is mandated by statutes crafted by the General Assembly after careful consideration of the different equities involved, and only the General Assembly has the authority to amend the law—should it decide to. Stephens' arguments to the contrary on appeal were either not brought before the trial court or fail to recognize important distinctions between wrongful death and medical malpractice actions, including who may

bring the action and by when.

{¶ 33} Judgment affirmed.

M. POWELL, J., concurs.

PIPER, P.J., dissents.

**PIPER, P.J., dissenting.**

{¶ 34} Unlike my colleagues, I find the clerk of court's compliance with Civ.R 58(B) and the syllabus of *Clermont Cnty. Transp. Improvement Dist. v. Gator Milford, 2015-Ohio-241,* to be satisfactory service of a final judgment, thereby commencing the time from which a notice of appeal must be filed. Stephens' notice of appeal in this case was filed out of time, thus denying our court jurisdiction to review her appeal. For this reason, I must respectfully part ways with the majority opinion that finds that after service of the trial court's December 11, 2018 judgment entry a notice of appeal filed nearly six years later was a timely filed appeal.[7]

{¶ 35} The requirements of Civ.R. 58(B) were clearly met in this case. Additionally, the spirit and letter and of law as set forth by the Ohio Supreme Court in *Gator Milford* was also clearly met. Non-binding dictum should not be followed by our court to create an excuse for untimely litigation to be resurrected. Therefore, because Stephens did not file her appeal from the trial court's December 11, 2018 decision within the time prescribed by App.R. 4(A)(1), this court is without jurisdiction to consider any of the issues that Stephens now raises within her appeal. It is for this reason that I express my dissent.[8]

---

7. The trial court dismissed the entirety of Stephens' wrongful death claims brought against both Dr. Spahn and the Hospital in the December 11 2018 entry. For ease of discussion, and for purposes of this dissent, any references to Dr. Spahn include both the doctor himself, as well as his practice group, Columbus Obstetricians-Gynecologists, Inc. dba Obstetrics & Gynecology-London.

8. Because this court is without jurisdiction to consider any of the issues that Stephens now raises within her appeal, I offer no opinion as to the merits of Stephens' single assignment of error.

**PRELUDE TO APPELLATE BRIEFING**

{¶ 36} On November 1, 2024, five years, ten months, and 21 days after the trial court issued its December 11, 2018 entry notifying the parties of its dismissal of the entirety of Stephens's wrongful death claims, Stephens filed a notice of appeal. Upon Stephens filing her notice of appeal, both Dr. Spahn and the Hospital moved to dismiss Stephens' appeal arguing the notice of appeal was untimely filed. Unfortunately, on December 27, 2024, our court's magistrate issued an interlocutory entry denying both motions to dismiss. In so ruling, our magistrate reserved the matter to be briefed and argued by the parties, but simultaneously determined that the trial court's docket did not comply with the requirements set forth in Civ.R. 58(B) and *Gator Milford*. The lack of a full review of the clerk of court's docket led our magistrate to determine Stephens' appeal was timely filed under App.R. 4(A)(1).

{¶ 37} However, our magistrate providing the parties with the ability to brief the issue reveals the uncertainty of the ruling. Our magistrate's preliminary ruling must now be corrected (rather than adopted, as my colleagues do, as if it had been fully litigated before the court). Instead, the magistrate emphasized that neither Dr. Spahn nor the Hospital were precluded from raising "any or all of the arguments" set forth within their motions to dismiss as part of their appellate briefs. Both Dr. Spahn and the Hospital included arguments within their respective briefs challenging the magistrate's misinterpretation of *Gator Milford* and Civ.R. 58(B). Since the arguments advanced by Dr. Spahn and the Hospital have merit, I express my dissent.

***GATOR MILFORD***

{¶ 38} In *Gator Milford*, the Ohio Supreme Court held that, pursuant to Civ.R. 58(B), "[t]he 30-day time period to file a notice of appeal begins upon service of notice of

the judgment and notation of service on the docket by the clerk of courts." *Gator Milford*, 2015-Ohio-241, at syllabus. In reaching this decision, the Ohio Supreme Court began its analysis with App.R. 4(A)(1), a rule which generally provides that an appeal must be filed within 30 days of a final order being issued. *Id.* at ¶ 6. However, as the Ohio Supreme Court then noted, pursuant to App.R. 4(A)(3), "[i]n a civil case, if the clerk has not completed service of the order within the three-day period prescribed in Civ.R. 58(B)," that 30-day period begins to run "on the date when the clerk actually completes service." *Id.* Thus, as the Ohio Supreme Court determined in *Gator Milford*, "it is clear that service by the clerk is the triggering event that starts the 30-day appeal period." *Id.*

{¶ 39} In making this determination, the Ohio Supreme Court initially found that "Civ. R. 58(B) requires that service be made by the clerk of courts; there is no stated exception."[9] *Id.* at ¶ 2. This is in addition to the Ohio Supreme Court finding that, "when a trial court issues a judgment, it must also issue a directive to the clerk of courts to serve all interested parties and attorneys with that judgment." *Id.* at ¶ 3. The Ohio Supreme Court based its findings on the plain language found in Civ.R. 58(B), which provides:

> When the court signs a judgment, the court shall endorse thereon a direction to the clerk to serve upon all parties not in default for failure to appear notice of the judgment and its date of entry upon the journal. Within three days of entering the judgment upon the journal, the clerk shall serve the parties in a manner prescribed by Civ.R. 5(B) and note the service in the appearance docket.[10] Upon serving the notice and notation of the service in the appearance docket, the service is complete.

---

9. The majority claims that the Ohio Supreme Court's decision in *Gator Milford* found there to be no stated exceptions to the requirements of Civ.R. 58(B). This is a mischaracterization of the *Gator Milford* holding. Rather, as quoted above, the Ohio Supreme Court's decision in *Gator Milford* held only that "Civ.R. 58(B) requires that service be made by the clerk of courts; there is no stated exception," thereby answering in the negative the narrow issue being decided. That issue being whether there was an "actual knowledge" exception to Civ.R. 58(B)'s service requirement.

10. Civ.R. 5(B)(2)(c) allows service by "[m]ailing it to the person's last known address by United States mail, in which event service is complete upon mailing."

**DICTUM NEED NOT BE FOLLOWED**

{¶ 40} As noted above, in a decision issued on December 27, 2024, this court's magistrate denied Dr. Spahn's and the Hospital's motions to dismiss Stephens' appeal for being filed untimely even though the trial court's judgment entry was filed December 11, 2018. In so doing, our magistrate determined that "a review of the clerk's docket reveals that it does not include the names and addresses of the parties served, the method of service, or the costs associated with service." Our magistrate therefore determined that "the order appealed from was improperly docketed and notice of the order cannot be presumed." Our magistrate did this based on the Ohio Supreme Court stating in *Gator Milford* that, after the trial court issues its directive to the clerk to serve all interested parties with notice of its judgment, Civ.R. 58(B) requires the clerk to then "indicate on the docket the names and addresses of the parties it is serving, the method of service, and the costs associated with the service," steps that, when followed, leaves "no question whether service was perfected according to rule." *Id*. at ¶ 3.

{¶ 41} The majority herein has affirmed and adopted our magistrate's decision. *See* Majority Decision, ¶ 6, fn. 1. To do so, however, is terribly misguided. It is misguided because nowhere within the plain language of Civ.R. 58(B) does it require the clerk, after serving the parties notice of the trial court's judgment, to indicate on the docket the names and addresses of the parties it is serving, the method of service, or the costs associated with the service. Civ.R. 58(B) merely requires the clerk to "*note the service in the appearance docket*." (Emphasis added.)

{¶ 42} The Ohio Supreme Court's comments that something more should be done under Civ.R. 58(B) serves as nothing more than non-binding dictum. Examples of the steps the clerk could take that, when followed, would leave "no question" as to whether

service was perfected in accordance with Civ.R. 58(B).[11] Rather than just answering the question presented in *Gator Milford*—i.e., whether there was an "actual knowledge" exception to Civ.R. 58(B)'s service requirement—the Ohio Supreme Court was merely ruminating on the need for service to be issued with "no question."

{¶ 43} The Ohio Supreme Court's musings on such issues constitutes non-binding dictum that need not be followed by this court. *See, e.g., Motorists Mut. Ins. Co. v. Ironics, Inc.*, ¶ 88 (Dewine, J., concurring in judgment only) (noting that "[t]he majority's musings" about the economic-loss doctrine and the integrated-systems rule were non-binding dictum because none of the majority's ponderings were "necessary to resolve this dispute about the meaning of a contract"); and *State v. Gwynne*, 2019-Ohio-4761, ¶ 41 (Kennedy, J. and DeWine, J., concurring) (noting that the court's "ruminating" on an issue that was not properly before the court in a case decided several years earlier in 2016 rendered its discussion of that unrelated issue non-binding dictum that need not be followed by the majority).

{¶ 44} The majority claims that the Ohio Supreme Court's commenting on a way in which the clerk could leave "no doubt" as to when Civ R. 58 (B) service was satisfied was actually "part of the binding precedential law from *Gator Milford*." Majority Opinion, ¶ 8, fn. 3. To support this claim, the majority cites Rep.Op.R. 2.2.[12] Pursuant to that rule, "[t]he law stated in an opinion of the [Ohio] Supreme Court shall be contained in its text, including its syllabus, if one is provided, and footnotes." The majority opinion argues that

---

11. Dictum, the plural of which is dicta, is "'an incidental and collateral opinion uttered by a judge, and therefore (as not material to his decision or judgment) not binding.'" (Parentheses in original.) *State ex rel. Gordon v. Barthalow*, 150 Ohio St. 499, 505-506 (1948), quoting *Webster's Second New International Dictionary 1679* (1953); *McCullough v. Bennett*, 2024-Ohio-2783, ¶ 17, fn. 1 ("We are not bound to follow dicta in a prior decision.").

12. This rule comes from the Supreme Court's Rules for the Reporting of Opinions effective July 1, 2012, the purpose of which "is to establish consistent standards in the reporting of opinions of the Supreme Court, the courts of appeals, and the Court of Claims." Rep.Op.R. 1.2.

Rep.Op.R. 2.2 should be interpreted as no part of an opinion should take precedence over another. Notably, however, the rule does not reject the notion that what the Ohio Supreme Court states in a syllabus or per curium opinion represents a pronouncement of the law when answering a question.

{¶ 45} It would also be foolhardy for Rep.Op.R. 2.2 to be interpreted as the Ohio Supreme Court eliminating the possibility of dictum being included within any of its opinions after that rule became effective on July 1, 2012. This is particularly true when considering the Ohio Supreme Court has itself found many of its own opinions released following the enactment of Rep.Op.R. 2.2 to contain non-binding dictum that need not be followed. *See, e.g., In re Moraine Wind, LLC*, 2024-Ohio-3224, ¶ 14 (noting that a case it had decided in 2020 included non-binding dictum that need not be followed); *State ex rel. Cincinnati Enquirer v. Forsthoefel*, 2022-Ohio-3580, ¶ 20 (noting that a case it had decided in 2014 included non-binding dictum that need not be followed); and *State ex rel. O'Neill v. Athens Cty. Bd. of Elections*, 2020-Ohio-1476, ¶ 28 (noting that a case it had decided in 2015 included non-binding dictum that need not be followed).

**FACTUAL PROCEDURE EXAMINED**

{¶ 46} Upon a simple review of the record, including the trial court's appearance docket, the requirements of Civ.R. 58(B) were clearly met in this case. This is evidenced by the certification sheet that can be downloaded and copied from the clerk's website. This certification sheet, which was docketed under the heading "POSTAGE" the same day the trial court issued its December 11, 2018 decision, clearly identifies the parties who were served, the method of service, and the costs associated with that service.[13]

---

13. The fact that the user must click on a hyperlink to access the certification sheet is immaterial and does not in any way indicate that the clerk did not adhere to Civ.R. 58(B)'s requirement requiring the clerk to "note the service in the appearance docket." To hold otherwise simply ignores the manner in which information is provided to users online and over the internet as opposed to how that same information would be made available to individuals who went to the clerk's office in person.

This complies with the Ohio Supreme Court's holding in *Gator Milford*, wherein the court stated within its syllabus that, pursuant to Civ.R. 58(B), "[t]he 30-day time period to file a notice of appeal begins upon service of notice of the judgment and notation of service on the docket by the clerk of courts regardless of actual knowledge of the judgment by the parties." *Gator Milford,* 2015-Ohio-241, at syllabus.

{¶ 47} It is for these reasons that I find, rather than denying Dr. Spahn's and the Hospital's motions to dismiss this appeal, our magistrate should have instead granted those motions as Stephens' notice of appeal was not timely filed in accordance with Civ.R. 4(A)(1). That the majority holds otherwise is an improper and a misguided exercise in applying what is clearly non-binding dictum that need not be followed by this court.

{¶ 48} In reaching this decision, I find it important to rebut Stephens' claim set forth within her reply brief arguing that the 30-day deadline for filing a notice of appeal does not begin until the trial court has (1) included on its judgment a directive to the clerk to serve all interested parties and attorneys with that judgment, and (2) the clerk indicated on the docket the "addresses of the parties." This is because Stephens' argument relies on the same non-binding dictum that this court's magistrate did when denying Dr. Spahn's and the Hospital's motions to dismiss. As the Ohio Supreme Court aptly noted in *Gator Milford*, "it is clear that service by the clerk is the triggering event that starts the 30-day appeal period."[14] *Id.* at ¶ 6.

{¶ 49} So long as the clerk actually served the judgment and made a notation of the service on the docket, service is complete, thereby triggering the 30-day appeal period to begin. That is exactly what occurred here immediately following the trial court issuing

---

14. It is interesting to note, amid all of Stephens' arguments, nowhere does she suggest the clerk's efforts of mailing out the judgment failed to give her notice of the judgment being entered of record.

its December 11, 2018 decision dismissing the entirety of Stephens' wrongful death claims brought against Dr. Spahn and the Hospital. Again, that the majority holds otherwise is improper and a misguided exercise in applying what is clearly non-binding dictum that need not be followed by this court.

{¶ 50} I also find it important to note that the cases that Stephens cites within her reply brief are distinguishable from the case at bar. Those cases being *In re Anderson*, 92 Ohio St.3d 63 (2001); *Blair v. Wallace*, 2010-Ohio-2734 (9th Dist.); *In re E.S.*, 2020-Ohio-4843 (5th Dist.); and *State v. Mitchell*, 2017-Ohio-8440 (11th Dist.).[15] In each of those cases, not only did the trial court not issue a directive to the clerk to serve all interested parties with notice of its judgment, the clerk also completely failed to ever serve the parties with such notice and/or make a notation of the service on the appearance docket as required by Civ.R. 58(B).

{¶ 51} The clerk in this case, however, clearly *did* serve the parties as evidenced by the certification sheet discussed above. Whether service by the clerk occurred is, in fact, not disputed in this case for Stephens does not raise any challenge to whether she received the trial court's judgment mailed to her by the clerk in the days immediately following the trial court issuing its December 11, 2018 decision dismissing the entirety of her wrongful death claims brought against Dr. Spahn and the Hospital.[16]

**CONCLUSION**

{¶ 52} Because Stephens did not file her appeal from the trial court's December

---

15. The majority relies on one of these cases, as well. That case being *In re E.S.*, 2020-Ohio-4843 (5th Dist.). Such reliance is misplaced, however. This is because, not only is that case distinguishable from the case at bar, "[d]ecisions from our sister districts, while assistive and many times highly persuasive, neither bind this court nor the various trial court's within its jurisdiction." *Keytack v. Warren*, 2006-Ohio-5179, ¶ 51 (11th Dist.).

16. The record in this case plainly establishes that the clerk served the parties with the trial court's judgment. However, Civ.R. 58(B) requires only *notice* of the judgment to be served. Certainly, being served a copy of the trial court's judgment is at least equivalent, if not better than, merely receiving notice of the judgment itself.

11, 2018 decision within the time prescribed by App.R. 4(A)(1), this court is without jurisdiction to consider any of the issues that Stephens now raises within her appeal. When we lack jurisdiction, we lack the authority to go forward. It is for this reason that I must dissent.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Madison County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge